## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CC-00004-SCT

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION AND ANNIE B. NEWMAN*

*v.*

*W.L. LEE, FORMER CIRCUIT CLERK OF HARRISON COUNTY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/8/92 |
| TRIAL JUDGE: | HON. R.I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | FRED J. LOTTERHOS, JR. |
| ATTORNEY FOR APPELLEE: | WALTER W. TEEL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 5/23/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/13/96 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Annie B. Newman has appealed the decision by the Circuit Court of Harrison County to deny unemployment benefits to her on the basis that she voluntarily terminated her employment without good cause with the Harrison County Circuit Clerk's Office. Finding that she voluntarily quit and lacked good cause to leave her job, we affirm the lower court's decision to deny unemployment benefits to Newman.

I.

¶2. On September 22, 1991, Annie B. Newman filed for unemployment benefits after she quit her job with the Harrison County Circuit Clerk's Office upon receiving a demotion for violating office personnel policy. The claims examiner with the Mississippi Employment Security Commission (MESC) allowed her claim and notified W.L. Lee, the Circuit Clerk of Harrison County, that his office, a reimbursable employer, would be charged on a dollar per dollar basis for the benefits. Lee appealed to the MESC on October 23, 1991, but the appeals referee affirmed the determination that Newman had good cause to voluntarily leave her employment. The Board of Review affirmed these findings on January 6, 1992.

¶3. Lee filed a petition for review with the Circuit Court of Harrison County. The court entered an order of reversal on December 10, 1992, disallowing Newman's benefits on the basis that the findings of the MESC were not supported by substantial evidence. Newman appeals the circuit court decision.

## II.

¶4. Newman began working with the Harrison County Circuit Clerk's office in August of 1984. In January of 1991, W. L. Lee, the Circuit Clerk of Harrison County, informed his personnel that in the upcoming circuit clerk campaign race, in which he would not seek re-election, staff members were not permitted to campaign for anyone during work hours. On May 3, 1991, Lee was informed by his office manager that Newman received a package containing campaign literature during work hours from a circuit clerk candidate.

¶5. Lee responded to the complaint by demoting Newman to her previous position from which she had recently been promoted. The demotion cut her pay by $100 per month. Lee informed Newman that she had the opportunity to work her way back up and prove that her conduct was simply an honest mistake. The written office personnel policy stated that an employee could be demoted for violating policies established by the Circuit Clerk.

¶6. Newman returned to work in her old position entering judgment rolls on May 6, 1991. Lee continued to receive complaints that she was campaigning during work hours. Soon thereafter, Newman advised Lee that she had no intentions of accepting the demotion, and that she planned to leave at the end of the month to work full time for a candidate. She left her employment at the end of the month.

¶7. Lee testified that Newman was a very good employee. The circuit clerk candidate who delivered the election material simply walked passed the counter and gave Newman an envelope to place in her purse. It was not unusual for a lawyer to simply walk past the front counter, however, this particular package contained a thick stack of bumper stickers. Newman maintained that upon receiving the envelope of bumper stickers, she simply placed it in her purse. She opened the envelope only because a fellow employee, Paula Olson, asked about its contents. Olson corroborated this testimony.

¶8. Gene Evans, Chief Deputy, Circuit Clerk, received a complaint from the other employees when the candidate brought the campaign literature in the office. The other employees thought it was unfair since no one was allowed to campaign during work hours. Evans believed that it was in the best interest of the circuit clerk's office to discipline Newman since it was made perfectly clear that no one could campaign during work hours.

## III.

¶9. Miss. Code Ann. § 75-5-531 (1995) states that "[i]n any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." *See Barnett v. Mississippi Employment Sec. Comm'n*, 583 So. 2d 193, 195 (Miss. 1991); *Ray v. Bivens*, 562 So. 2d 119, 121 (Miss. 1990).

¶10. The facts found by the appeals referee of the Mississippi Employment Security Commission and adopted by its board of review were supported by substantial evidence. The real dispute in this case instead centers on whether these particular facts support a finding that Newman had good cause for voluntarily leaving her employment.

¶11. The appeals referee and the board of review with the MESC specifically found that Newman was entitled to receive unemployment benefits because she had good cause to voluntarily leave her job with the

circuit clerk's office. Miss Code Ann. § 71-5-513A(1)(a) (1995) denies unemployment benefits to the employee who voluntarily leaves work without good cause. It further states that "[t]he burden of proof of good cause for leaving work shall be on the claimant, and the burden of proof of misconduct shall be on the employer." § 71-5-513A(1)(a).

¶12. The following paragraph constituted the opinion of the Board:

> It is the opinion of the Referee, in this case, that the evidence presented does not substantiate a finding that claimant violated the employer's policy of campaigning for a candidate during working hours. Furthermore, the transfer and the reduction of pay was motivated by an assumption that claimant had violated such policy. Under such circumstances, the Referee finds that the claimant was with good cause in voluntarily leaving her job. The Claims Examiner's determination will therefore be affirmed.

The circuit court reversed this decision necessarily accepting the fact that Newman was justly disciplined for violating office policy against campaigning during work hours and therefore without good reason to quit her job.

¶13. The facts demonstrate that Lee made it clear to his staff that it was policy that staff members may not campaign or solicit votes for candidates during work hours. The personnel policy drafted by the circuit clerk's office provided that "Employees may be moved to a lower job with lower pay for the following reasons: . . . (c) Policies established by the Circuit Clerk." The facts are undisputed that Newman received an envelope containing campaign literature from a circuit clerk candidate during work hours and showed the other employees the campaign literature in her purse. Consequently, this Court concludes that she was properly disciplined for a direct violation of office policy. She was disciplined exactly according to office policy. She voluntarily quit and subsequently failed to meet her burden of showing good cause for voluntarily leaving her job. As a result, she was not entitled to unemployment benefits. The judgment of the circuit court is hereby affirmed.

¶**14. JUDGMENT IS AFFIRMED**.

**LEE, C.J., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ., AND SMITH, J.**

**BANKS, JUSTICE, DISSENTING:**

¶15. In this matter we consider whether a former employee of a circuit clerk's office is disqualified from receiving unemployment compensation. We should conclude that there was substantial evidence to support the Mississippi Employment Security Commission's finding that the claimant did not violate the policy against campaigning during working hours and therefore claimant's voluntary leaving after a wrongful demotion for such campaigning, was with "good cause." Accordingly, we should reverse the judgment of the circuit court and reinstate the Commission's decision allowing unemployment benefits.

I.

¶16. Annie B. Newman began working with the Harrison County Circuit Clerk's office in August of 1984. She was characterized by Lee and others as a good employee. She had been promoted one month before the incident which precipitated her departure. In January of 1991, W. L. Lee, the Circuit Clerk of Harrison

County, informed his personnel that he would not seek reelection, and that it was now office policy that staff members were not permitted to campaign for anyone during work hours.

¶17. On May 3, 1991, Lee was informed by his office manager that Newman received a package containing campaign literature during work hours from a circuit clerk candidate, Gemmel. Lee responded by demoting Newman to her old position which included $100 per month salary reduction. Lee informed Newman that she had the opportunity to work her way back up and prove that her conduct was simply an honest mistake.

¶18. Newman returned to work in the lesser position May 6, 1991. Lee testified that he received more complaints that she was continuing to campaign during work hours. Soon thereafter, she advised him that she had no intentions of accepting the demotion and that she planned to leave at the end of the month to work full time for Mr. Gemmel. She left at the end of the month.

¶19. Under the personnel policies of the circuit clerk's office an employee could be demoted for a violation. One policy prohibits employees for campaigning or soliciting votes during working hours.

¶20. Newman filed for unemployment benefits on September 22, 1991. On October 22, 1991, the claims examiner with the Mississippi Employment Security Commission (MESC) allowed her claim. W. L. Lee was notified that Newman would be entitled to benefits and that his office would be charged with the benefits paid on a dollar per dollar basis, this being a reimbursable employer. Lee then filed an appeal from that determination on October 23, 1991.

¶21. Lee admitted that it was not unusual for someone to simply walk past the counter in the clerk's office and walk to the back. On the occasion when the package was left, Gemmel simply walked past the counter and gave Newman an envelope which she placed in her purse. It was later revealed that the envelope contained a thick stack of bumper stickers. Newman never denied that she received the items from Gemmel. She opened the envelope and showed another employee only when asked about the contents of the envelope. There is no indication that Newman did more than accept the literature. She was not soliciting votes at this time.

¶22. While Lee testified that he was told that Newman was also on the phone incessantly before this incident, Lee received that information for the first time on the day of the hearing. Lee also testified that he supported Gemmel's opponent and that Gemmel made derogatory comments about him to the community as a result of Newman's demotion.

¶23. Gene Evans, Chief Deputy Circuit Clerk, testified. He said that he received a complaint from the other employees when Gemmel brought the campaign literature to the office. The other employees felt that it was unfair since they were also not allowed to campaign during work hours. He believed that it was in the best interest of the circuit clerk's office to discipline Newman. He gave no different version of the envelope incident from that stated by Newman. Evans maintained that Lee made it perfectly clear that no one could campaign during work hours. Evans admitted, however, that Gemmel's opponent filmed a commercial at the office during work hours. Evans testified that the Circuit Clerk's office was busy with candidates during any election. He also said that candidates were often taken around the office and introduced to the employees during work hours.

¶24. Newman said that she was informed by Lee that she was being transferred to an office across the hall

to enter judgment rolls because the ladies in the circuit court department were angry about her receiving bumper stickers during work hours. Lee explained to Newman that he was not impressed with Gemmel because he was a "knucklehead," and that Gail Parker deserved to be elected because she had been around for nearly twenty years. Newman said that she reminded Lee that Evans was permitted to sell luncheon tickets for Parker's campaign during work hours. Newman maintained that she simply put the envelope in her purse after Gemmel laid it on the counter. A fellow employee asked her what she had received, and Newman opened the envelope because she was not sure of its contents. She opened the envelope and discovered that it contained bumper stickers. Newman admitted that she had previously informed Gemmel outside of work hours that she intended to support his campaign.

¶25. Newman also testified that Lee complained that Gemmel was talking in the grocery store about Lee having fired Newman. Lee maintained that he was not firing Newman, but that he was cutting her salary by $100 per month. She indicated that she would not accept a pay cut, and that she had planned to leave May 31 because the other employees were complaining about her activities while at the same time Evans was campaigning for Parker by selling luncheon tickets during work hours. Newman maintained that she never made any campaign phone calls from work. There was no evidence that she did.

¶26. Ella Lock, a deputy clerk at the office, testified that Newman initiated a conversation about Gemmel's campaign in March of 1991. Newman specifically stated that she had heard that Gemmel did not approve of hiring employees who resided outside Harrison County. Lock said that she did not recall Newman ever soliciting a vote for Gemmel.

¶27. Paula Olson, another deputy clerk, testified that Gemmel simply walked into the office, greeted everyone, and placed an envelope on the counter for Newman. Newman then placed it into her purse. Newman opened the envelope after Olson inquired as to the contents of the envelope. She then placed the envelope back in her purse.

¶28. On November 26, 1991, the Appeals Referee for the MESC ruled in favor of Newman finding as follows:

> Claimant was employed by the Harrison County Circuit Clerk office for approximately seven years ending on May 12, 1991, her last day of work. On January 1991, Mr. Webb L. Lee, the incoming [sic] circuit clerk, announced that he would not be running for this office which he had held for twenty-eight years. He informed the employees if anyone was interested in running for the office that the policies were that they must go on a leave of absence. He also advised all the employees that the policy regarding campaigning or soliciting votes during work will not be tolerated. However, after work what they did in regards to political campaigns was their own business. Around May 3, 1991, a candidate came in and spoke to the claimant and placed a seal envelope on top of the counter. Claimant who was working as a clerk picked up the envelope and placed it in her purse. When this candidate left the office one of the employees asked the claimant what was in the envelope. Claimant pulled out the envelope, opened it and showed the employee what was in the envelope. It appeared there were some bumper stickers and some forms in the envelope. Claimant did not say anything and placed it back in her purse. The circuit clerk was informed on what had transpired and called her into his office to discuss the incident and advised her that he would need to switch her from the job that she was working to another office. Claimant accepted the move and began work as a data entry operator. On May 7, 1991, a letter was prepared by Mr. Lee which indicated that because claimant

had been transferred from the circuit court department to the circuit clerk office her days and the amount of responsibility and work were significant [sic] decreased because of the transfer, her salary would be reduced by $100.00, per month effective May 15, 1991. When this statement was presented to the claimant on May 13, 1991, claimant informed the circuit clerk that she could no longer be employed by him because of her salary decrease. Claimant was transferred on the grounds that it was suspected that claimant had been actively campaigning for a candidate during working hours. Claimant denied doing any campaigning during working hours but she did admit that she was supporting a candidate.

The MESC Board of Review affirmed the Appeals Referee's decision and findings of fact on January 6, 1992.

¶29. Lee filed a petition for review of the decision with the Harrison County Circuit Court. The circuit court overruled the decision of the MESC and disallowed Newman's benefits on the basis that the findings of the MESC were not supported by substantial evidence. The MESC and Newman appeal to this Court.

II.

¶30. This Court has recognized that the findings of the Commission may not be disturbed by appellate courts where in absence of fraud the factual conclusions are supported by substantial evidence and the relevant law was properly applied to the facts. *Mississippi Employment Security Commission v. Gaines*, 580 So. 2d 1230, 1232. *See also* Miss. Code Ann. § 71-5-531 (1972) (stating that "[i]n any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."); *Mississippi Employment Security Commission v. Percy,* 641 So. 2d 1172 (Miss. 1994); *Booth v. Mississippi Employment Security Commission,* 588 So. 2d 422 (Miss. 1991); *Mississippi Employment Security Commission v. Flanagan*, 585 So. 2d 783 (Miss. 1991). "On appeal, this Court reviews matters of law de novo." *Natchez Equipment Company v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993).

¶31. The burden of proof in a voluntary quit case is:

Under Miss. Code Ann. § 71-5-511 (1972), an individual need only show that she has been paid wages during a base period for insured work, she is unemployed and registered for work and that she "is able to work and is available for work" in order to be eligible for unemployment benefits. Section 71-5-513 provides for certain disqualifications for persons otherwise eligible, including the disqualification for leaving work voluntarily without "good cause." In this jurisdiction, the burden of proof is on the employer to show by substantial, clear and convincing, evidence that the claimant is disqualified.

*Ferril v. Mississippi Employment Security Commission*, 642 So. 2d 933, 935-36 (Miss. 1994) (quoting *Gaines*, 580 So. 2d at 1233).

¶32. Although this Court has considered whether reduction in pay is "good cause" in compensation cases, we for the first time consider whether an employer's disciplinary actions can constitute "good cause." The issue before has been considered in Pennsylvania. Where that court has stated that, in the context of unemployment compensation "an unjustified demotion in job position or reduction of pay will provide good

cause for a voluntary termination." ***Old Forge Bank v. Unemployment Compensation Board of Review,*** 666 A.2d 761, 765 (Pa. 1994). I agree.

¶33. The dispositive issue at the hearing was whether Newman had campaigned, during working hours, thereby justifying her demotion under the office's policies. The following paragraph constituted the opinion of the board:

> Section 71-5-513 A(1)(a) of the Law provides that an individual shall be disqualified for benefits if he left work voluntarily without good cause.

> It is the opinion of the Referee, in this case, that the evidence presented does not substantiate a finding that claimant violated the employer's policy of campaigning for a candidate during working hours. Furthermore, the transfer and the reduction of pay were motivated by an assumption that claimant had violated such policy. Under such circumstances, the Referee finds that the claimant was with good cause in voluntarily leaving her job. The Claims Examiner's determination will therefore be affirmed.

¶34. It is undisputed that Newman received an envelope which contained literature from Gemmel, who was a circuit clerk candidate. She placed the envelope in her purse. A co-worker asked Newman what was in the envelope, and Newman showed her. Newman then placed the envelope back in her purse. Lee claims that he received additional complaints regarding Newman campaigning during working hours. However, these were not substantiated by the record. The only conduct that the record supports, is the receiving of the envelope and showing the contents to a coworker. The personnel policy does not define "campaigning." The Commission found that receiving a package and showing its contents to one person does not constitute "campaigning," I agree.

¶35. The evidence shows that Lee demoted Newman, because she received a package with campaign paraphernalia and she showed it to a co-worker, during working hours. Lee relied on the policy allowing demotion for campaigning during working hours. Newman denied any other incident of campaigning on her part and no contrary proof was offered. The Commission found the evidence insufficient to find that Newman campaigned during working hours, in violation of the policy. There was evidence to support the Commission's decision that Lee failed to meet his burden and it was error for the circuit court to reverse.

¶36. For the foregoing reasons this Court should reverse the judgment of the Harrison County Circuit Court and reinstate the decision of the Board of Review.

¶37. I respectfully dissent.

**PRATHER AND SULLIVAN, P.JJ., AND SMITH, J., JOIN THIS OPINION.**